FERGUSON (OWENS), APPELLEE, *v.*
OWENS ET AL., APPELLANTS.
OWENS ET AL., APPELLANTS, *v.*
FERGUSON (OWENS), APPELLEE.

(No. C-850014—Decided
November 27, 1985.)

*Santen, Shaffer & Hughes* and *William B. Singer,* for appellee.
*Simon Groner,* for appellants.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

Appellant Sally Owens was divorced from Ronald Owens on August 22, 1978, pursuant to a decree of divorce from the Circuit Court of Cabell County, West Virginia. The decree provided, *inter alia,* that:

"The defendant [Ronald Owens] has agreed and is hereby Ordered to make arrangements through his company to purchase a One Hundred Thousand Dollar ($100,000.00) *life .insurance policy* for the benefit of the children, however, the policy shall be owned by the plaintiff [Sally Owens] and she shall pay the premiums on said policy." (Emphasis added.)[1]

At the time of the divorce, Ronald Owens was employed by Robert O. Whitesell and Associates, Inc. ("Whitesell") in its Cleveland, Ohio office. One of the fringe benefits provided through Whitesell to Owens was a life insurance policy with a face amount of $12,000. Ronald Owens designated Sally Owens as the beneficiary of this policy, which remained in effect until Owens' employment was terminated by Whitesell in March 1979.

Subsequent to the divorce decree, Ronald Owens obtained accidental death and dismemberment insurance with a death benefit of $100,000. The term of the policy was January 1, 1979 through December 31, 1979. Owens named the children of his marriage to Sally Owens as beneficiaries of this policy. This policy remained in effect during and after the term of the insurance policy that ended with Owens' discharge from Whitesell.

The annual premium for the accidental death policy was $115 which was deducted from Owens' paychecks of January, February, March and April

---

[1] The record reveals that the parties were married in 1959. To this union five children were born. The decree awarded custody of the minor children to Sally Owens.

1979, in four equal installments of $28.75.[2]

After Owens obtained this insurance, he wrote to Sally Owens on March 17, 1979: "This is to advise you that they deducted the bal.[,] $114.25[,] of the life insurance off of my last check. Instead of taking this money from your child support I will now owe you a bal[.] of $127[.]75 for back support[.]"[3]

Ronald Owens was unemployed from March 1979 until November 1979, when he obtained employment with Solid Controls, Inc. of Minneapolis, Minnesota. Through Solid Controls, Owens was able to enroll as an insured in a $40,000 group life insurance policy issued by the defendant below, Great West Life Assurance Company ("Great West"). Owens named the appellee, Donna Ferguson (Owens), as beneficiary under this policy.[4]

Ronald Owens died on December 14, 1979. As Owens' death was not accidental, payment of the $100,000 accidental death policy was not triggered.

Subsequent to the death of Ronald Owens, appellee learned of the Great West group policy. On August 24, 1980, she instituted suit against Great West in the court below. In the complaint designated as case No. A-8003425, appellee demanded that Great West pay to her the proceeds of the policy *sub judice.* Great West answered and interpleaded appellant, Sally Owens.

On May 4, 1981, the appellants[5] initiated their suit designated as case No. A-8103668 in the court below against Great West and the appellee, in which the appellants alleged that they had a vested, equitable interest in the proceeds of the $40,000 Great West policy by virtue of Ronald Owens' legal obligation under the decree of divorce to designate his children as beneficiaries of his life insurance policy.[6]

Thereafter, case Nos. A-8003425 and A-8103668 were consolidated, the issues therein being the same. Next, appellee and the appellants each filed motions for summary judgment pursuant to Civ. R. 56. On November 30, 1981, the trial court granted summary judgment in favor of the instant appellee, and the appellants appealed to this court. We affirmed, holding that there was "no demonstration upon the record, sufficient to create a genuine issue of material fact, that the appellee acquired a right to those proceeds by any means contradictory to the fundamental principles of equity. * * *" *Ferguson* v. *Great West Life Assurance Co.* (Nov. 3, 1982), Hamilton App. Nos. C-810967 and -810968, unreported, at 5. In so holding, we noted that the provision of the divorce decree concerning the life insurance was ambiguous. *Id.* at 3.

The instant appellants next took their appeal to the Ohio Supreme Court. That court reversed and remanded the cause *sub judice,* noting that:

"Such a state of the facts presented

---

[2] Owens was paid his salary by Whitesell on a monthly basis.

[3] The divorce decree journalized a child support arrearage of $384.29.

[4] The record discloses that Ronald Owens met the appellee in 1976. They resided together from June 1978, until Owens' death in December 1979. At the time of his death, Owens and the appellee resided in Cincinnati, Ohio.

[5] The appellants are Sally Owens and the five children born issue of her marriage to Ronald Owens.

[6] It continues to be appellants' contention that the $100,000 accidental policy did not meet the requirements of the decree which mandated that Ronald Owens maintain *life insurance* on his life for the benefit of his children.

Appellants filed an earlier suit against the appellee and Great West. That case was consolidated with case No. A-8003425 and was subsequently voluntarily dismissed.

here reasonably raises the issue of whether the accidental death and dismemberment policy purchased by Ronald Owens was that policy which was contemplated by the parties and referred to in the prior divorce decree agreed to by the parties. If the trier of facts is able to answer this query in the affirmative, then further development of the facts and circumstances in order to determine the intent of the parties would be unnecessary. However, if this query is answered in the negative, then a further determination must be made. The divorce decree required Ronald Owens to purchase $100,000 of life insurance 'through his company.' At such time he was employed by Whitesell and Associates. However, as stated, at the time he purchased the $40,000 life insurance policy he was in the employment of another company. This evidence reasonably raises a genuine issue as to whether the divorce decree had reference to the company by which he was employed at the time of the decree, or to any subsequent employer." *Ferguson* v. *Owens* (1984), 9 Ohio St. 3d 223, 227.

On remand, trial was had to the court below without the intervention of a jury. At the conclusion of the trial, the court found for the appellee, and the appellants again bring a timely appeal in which they assert three assignments of error.

For their first assignment of error the appellants postulate that the trial court's ruling is contrary to law. During oral argument and after examination by the court, counsel for the appellants clarified the first assignment and acknowledged that he intended to assert that the trial court's ruling was contrary to law as it was based upon insufficient evidence. We shall proceed to address the renovated assignment of error.

As we noted earlier, the Ohio Supreme Court set forth a two-pronged analysis concerning the life insurance provision of the divorce decree. First,

the trier of fact was to determine whether the accidental death and dismemberment insurance policy purchased by Ronald Owens was the policy contemplated by the parties and to which the decree referred. In the event that the trial court determined that the policy was not the one so contemplated, then it was incumbent upon the trier of fact to determine whether the phrase "through his company" contained in the insurance provision of the decree referred to the company by which Owens was employed at the time of the decree, or to any subsequent employer. The court stated that if the trier of fact found that the accidental insurance policy was the one so contemplated by the parties in the decree, then further development of the facts and circumstances in order to determine the intent of the parties would be unnecessary. *Ferguson* v. *Owens, supra,* at 227.

The court below issued findings of fact and conclusions of law in which it found, *inter alia*:

"12. Based upon all of the surrounding facts and circumstances in evidence, the Court finds that Ronald Owens, in negotiating the life insurance provision of the divorce decree, intended and understood his obligation to be to purchase the $100,000.00 accidental death policy available through Whitesell from the ERA,[7] and that Ronald Owens did not evidence any understanding or appreciation of the technical difference between 'life insurance' and the $100,000.00 [policy] that he purchased. The court further finds that Sally Owens was aware of the fact that Ronald Owens had a $12,000.00 life insurance policy with Whitesell, and that [the other policy] available to him through

---

[7] The $100,000 accidental death and dismemberment policy was issued by the ERA Insurance Trust of Chicago, Illinois.

that Company was $100,000.00 accidental death insurance.

"* * *

"15. The Court further finds that Ronald Owens fully performed all those actions required of him by the terms of the insurance provision of the divorce decree quoted above."

We have painstakingly reviewed the record before us and we determine that all the essential findings by the trial court were supported by competent, credible evidence. See *Ross* v. *Ross* (1980), 64 Ohio St. 2d 203, 204-205 [18 O.O.3d 414]. The record reveals that counsel for the appellants asked of the appellee during her testimony, as if upon cross-examination:

"Q. Did he tell you at that time that he was obligated to purchase $100,000 of life insurance through his company?

"A. He told me they wanted him to get a life insurance policy on the kids for $100,000, that's no problem, I can get that through Whitesell.

"* * *

"Q. Did you come to any conclusion about what that information about the accidental death and dismemberment insurance meant?

"A. I came to the conclusion I knew that because of the divorce decree, that Ron was purchasing that insurance.

"Q. But, he didn't tell you that?

"A. We went through this in the deposition. He didn't sit down at a table, and say, now, Donna, I am doing this and this for this and this reason. It was common knowledge, I knew that."[8]

The record further discloses the following cross-examination of appellant Sally Owens:

"Q. Now, Mrs. Owens, you indicated that you had, with your then employer, Ashland Oil Company —

"A. Yes.

"Q. — a life insurance program, which you felt fit the bill. I am paraphrasing what you were saying, I guess maybe summarizing it, but you felt that provision, or that program at the Ashland Oil Company would provide what it was that you wanted, isn't that right?

"* * *

"A. No, Ron, no.

"Q. What I'm saying is from the standpoint — I'm sorry, I misspoke, okay. You could have insured yourself, couldn't you?

"A. Yes, and did; it's free.

"Q. If anything happened to you —

"A. It's a company benefit.

"Q. Now, did you make any investigation to determine what the premium for a policy of $100,000 life insurance would be?

"A. No, sir, I did not, no, because that was just a quick negotiation on that very last day, just before we went into court. I wouldn't have time to do that kind of research.

"Q. I see. And did you ask your attorney to find that out?

"A. It wouldn't matter, because it was my choice how much I took.

"Q. I take it that after you got * * * [the March 17, 1979] note [*supra*] from Ron, you didn't investigate to determine what kind of insurance policy he had purchased, did you?

"A. I asked him for it.

"Q. You said you asked him for it?

"A. Well, I didn't ask him directly. I'm sorry, I didn't. He would come to see the children, and I asked the children to ask him for it."

We conclude that the court below had before it competent, credible evidence going to all the essential elements of the case. See *Ross* v. *Ross,*

---

[8] During our examination of the record before us we came across a sealed envelope. The documents attached to the envelope indicated that it contains the transcribed deposition of the appellee taken on August 21, 1984.

*supra.* Accordingly, the appellants' first assignment of error is overruled.

Appellants contend in their second assignment of error that the trial court erred in excluding evidence of possible fraud by Ronald Owens. We are not persuaded.

The court below found, *inter alia*:

"14. The court further finds that there is no evidence of any misrepresentation, deception, or fraudulent intent on the part of Ronald Owens with respect to the negotiation, performance and fulfillment of the terms of the insurance provision of the divorce decree quoted above."

The record reflects that the appellants sought to elicit evidence concerning the alleged failure of Ronald Owens to comply with *pendente lite* orders during the West Virginia divorce proceedings, in order to "show that there is a pattern, beginning before, and continuing after the decree was entered * * * [that] Ron Owens did not comply with court orders." The trial court sustained objections to questions pertaining to pre-decree orders, but permitted the appellants to elicit testimony concerning Owens' compliance with post-decree orders. We have carefully reviewed the record before us and we conclude that the court below properly excluded the pre-decree evidence. Evid. R. 404 provides in pertinent part:

"(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Appellants further contend that the court below excluded evidence regarding allegedly dishonest expense reports from Owens to his employer, and appellants proffered such evidence into the record. However, this evidence was subsequently received by the trial court during appellants' cross-examination of the appellee during her case-in-chief. Assuming *arguendo* that the trial court's initial rejection of such testimony was erroneous, such error was harmless, as it did not affect the substantial rights of the appellants. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 475 [21 O.O.3d 285]. An appellate court will not reverse a judgment on the basis of error that is harmless. Civ. R. 61. As a result, the appellants' second assignment of error is feckless.

For the third and final assignment of error, appellants urge that the trial court's ruling is against the manifest weight of the evidence. Again we are unpersuaded. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261], syllabus.

The appellants' third assignment of error is overruled and the judgment of the court below is affirmed.

*Judgment affirmed.*

BLACK, P.J., KEEFE and HILDE-BRANDT, JJ., concur.