KELLEY et al., Appellants,

v.

CAIRNS & BROTHERS, INC. et al., Appellees.

[Cite as *Kelley v. Cairns & Brothers, Inc.* (1993), 89 Ohio App.3d 598.]

Court of Appeals of Ohio,
Summit County.

No. 15882.

Decided July 14, 1993.

600

*Daniel M. Walpole,* for appellants.

*Chris T. Nolan,* for appellees Horace Small Manufacturing Company and Levinson's Co.

*Lawrence A. Sutter III,* for appellee Cairns & Brothers, Inc.

*Clarence J. Bartunek,* for appellee Best Manufacturing Company.

*Max Rothal,* Law Director, for appellee Akron.

*Buckingham, Doolittle & Burroughs Co., L.P.A.,* and *David W. Hilkert,* for South Akron Awning.

*Walter R. Matchinga,* for Morning Pride Manufacturing Company.

*Lawrence R. Bach,* for Fire House.

REECE, Judge.

Plaintiffs-appellants, Jerry S. Kelley and Michael D. Jackson, fire fighters with the Akron Fire Department, suffered severe burns on March 3, 1986, during a structural fire. On February 16, 1988, they each filed separate complaints against numerous defendants. Their cases were consolidated on May 8, 1988 and amended complaints were filed by both on June 7 and October 31, 1988.

In his second amended complaint, Jackson named five defendants, including three of the appellees: the city of Akron ("Akron"), Cairns & Brothers, Inc. ("Cairns"), and Best Manufacturing Company ("Best"). In addition to these defendants, Kelley brought suit against Horace Small Manufacturing Company ("Small"), and Levinson's Co. ("Levinson's"), also appellees to this appeal.

The alleged liability of Small and Levinson's arises from being the manufacturer and supplier of the "Mr. Two–Ply" pants worn by Kelley during the fire. Cairns is the manufacturer of the model "660c Metro" fire-fighter helmets worn by appellants. Jackson and Kelley also wore, respectively, "Polar Bear" and "Nitty Gritty 93 NFW" gloves produced by Best. Appellants contend that these products were defective in structure and/or design, thereby causing and/or contributing to their injuries. Appellants advance identical theories of recovery against these defendants: negligence, strict product liability, breach of warranties, and negligent and intentional infliction of emotional distress. Finally, appellants contend that Akron is liable in damages for supplying them with this

allegedly defective equipment. Their claims against Akron sound in tort, contract and violation of their constitutional rights.

On February 21, 1992, the trial court granted Akron's motion to dismiss and alternative motion for summary judgment as to all claims. Except for Best, the remaining appellees were granted summary judgment in their favor. On July 6, 1992, Jackson dismissed, without prejudice, his claims against Best. That same day, a jury trial commenced on Kelley's causes of action against Best, the sole remaining defendant. Thereafter, the jury returned a verdict for Best. Kelley and Jackson appeal, asserting errors relating to the dismissal of certain claims against Akron, the grants of summary judgment, and trial procedures. We will address each of appellants' assigned errors as they relate to each defendant-appellee.

## The City of Akron

### Assignments of Error

"I. The trial court denied plaintiff Kelley due process of law by failing to consider his second amended complaint when granting a [Civil] Rule 12(B)(6) dismissal on certain of his claims.

"II. The trial court erred in granting [a] Civil Rule 12(B)(6) dismissal for reason plaintiff Kelley's second amended complaint alleged sufficient facts to entitle him to recover from defendant City of Akron.

"III. The trial court erred in granting Civil Rule 12(B)(6) dismissal for reason plaintiff Jackson's second amended complaint alleged sufficient facts to entitle him to recover from defendant City of Akron.

"IV. Defendant City of Akron's motion to dismiss was improperly granted as to counts five, six and seven of plaintiff Kelley's amended complaint and counts three, four and five of plaintiff Jackson's second amended complaint.

"V. Summary judgment was improperly granted on plaintiffs' intentional tort claims as there were genuine issues of material fact and defendant was not entitled to judgment as a matter of law.

"VI. Plaintiffs were entitled to be heard on their breach of contract claims regardless of the presence of an arbitration clause in the collective bargaining agreement.

"VII. The trial court erred in granting defendant City of Akron's motion to dismiss plaintiffs' 42 U.S.C. Section 1983 claim."

Appellants' claims against Akron fall into three categories: tort, contract and constitutional violations. Additionally, Kelley, in his first assignment of error, contends that the trial court erred in failing to consider his second amended

complaint in granting Akron's alternative motion for dismissal and summary judgment. After addressing each category of appellants' claims, we will reach Kelley's procedural issue.

*Tort Claims*

Except for appellants' action for intentional infliction of emotional distress, the trial court considered that appellants' remaining tort claims sounded in negligence. Because Akron, as appellants' employer, is immune from liability for injuries negligently received by an employee during the course of employment, the court granted Akron's motion for summary judgment. See R.C. 4123.74 and 4123.741 of Ohio's Workers' Compensation Act.

Appellants contend there exists a genuine factual issue as to whether Akron's alleged failure to provide adequate fire-fighting equipment rises to the level of an intentional tort. In reviewing appellants' amended complaints, we find their averments against Akron lacking. Only in their actions for intentional infliction of emotional distress, breach of contract and violation of Section 1983, Title 42, U.S.Code, do appellants assert "willful," "wanton" or "intentional" behavior on the part of Akron. However, In *Jones v. VIP Development Co.* (1984), 15 Ohio St.3d 90, 96, 15 OBR 246, 251, 472 N.E.2d 1046, 1052, the Ohio Supreme Court noted that the absence of such "passwords" as "intentional" or "willful" in a complaint is not dispositive of whether an intentional tort is alleged. Similarly, the use of the word "negligence" is not fatal. *Id.* An intentional tort is sufficiently alleged so long as the conduct described in the complaint constitutes an intentional tort. *Id.* at 95–96, 15 OBR at 250–252, 472 N.E.2d at 1051–1052. Construing appellants' amended complaints liberally, their overall tenor asserts intentional tort claims against Akron. We will proceed to determine whether these intentional tort claims were sufficiently supported by appellants so as to survive summary judgment.

From the outset of this case appellants have urged that fire-fighting equipment must satisfy the standards set by the National Fire Protection Association ("NFPA"). In response to appellants' interrogatories, Akron admitted that it considered NFPA standards to be the "applicable minimum safety standard" for its fire department. Testing performed by appellants showed that the coat and gloves worn by appellants failed to meet these standards, as did the uniform pants worn by Kelley. Additionally, NFPA recommends that a protective hood be worn by fire fighters under their helmets. Appellants contend that issuance of such hoods by Akron would have prevented their head and facial burns.

The Ohio Supreme Court's decision in *Jones v. VIP Development Co., supra,* defined tort actions by employees against employers. In an attempt to limit the scope of *Jones,* the General Assembly enacted R.C. 4121.80 (effective November

3, 1989; repealed December 1, 1992). Although this statute was found violative of Sections 34 and 35, Article II of the Ohio Constitution in *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, the application of *Jones* has been narrowed by the court, beginning with *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, and *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 522 N.E.2d 511.

In these cases, the court adopted the definition of "intent" as contained in the Restatement of Law 2d, Torts (1965) 15, Section 8A. *Van Fossen,* 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus; *Pariseau,* 36 Ohio St.3d at 126, 522 N.E.2d at 513, fn. 1. This standard was further refined in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph two of the syllabus, wherein the court held:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and *the employer knows that injuries to employees are certain or substantially certain* to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. *However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.*" (Emphasis added.)

The dispositive question thus becomes at what level does the employee's exposure to risk become so egregious as to constitute an intentional tort by the employer. The line between negligent and reckless conduct on the one hand, and intentional wrongs on the other, must be carefully drawn lest the purpose of the Workers' Compensation Act be thwarted. See *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 620–621, 23 O.O.3d 504, 512–513, 433 N.E.2d 572, 579–581 (Locher, J. concurring in part and dissenting in part). " 'If "intentional wrong" is interpreted too broadly, this single exception would swallow up the entire "exclusivity" provision of the Act.' " *Van Fossen,* 36 Ohio St.3d at 115, 522 N.E.2d at 503, quoting *Millison v. E.I. du Pont de Nemours & Co.* (1985), 101 N.J. 161, 177, 501 A.2d 505, 513.

In its motion for summary judgment, Akron asserted that appellants could not factually support their intentional tort claims. When a party moves for summary judgment, negating an essential element for which the nonmovant will carry the burden of proof, the responding party must set forth "specific facts showing that there exists a genuine issue for trial." Civ.R. 56(E); *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274.

Construing the facts most favorably for appellants, as we must for purposes of summary judgment, we conclude that they have failed to satisfy this burden.

The Akron Fire Department's Uniform Manual lists protective hoods and structural fire-fighting gloves as optional equipment which individual firefighters can acquire. Such optional equipment is paid for by Akron pursuant to the manual's reimbursement procedures. The manual further states that these optional items must comply with NFPA standards. As to the fire-fighter coats worn by appellants, their own independent testing verified that the outer shell of the coats complied with NFPA standards for flame and heat resistance. Only the lining failed to meet the applicable standards. These same tests showed that the Mr. Two–Ply pants worn by Kelley, while failing to comply with NFPA standard for flame resistance, complied with the standard for heat resistance.

While the coat and pants failed to comply with every NFPA recommendation, appellants failed to make any showing that city officials were aware of such noncompliance prior to the injuries giving rise to this case. And, although the city was aware that the gloves worn by appellant did not satisfy NFPA standards, appellants were advised by the uniform manual that NFPA-compliant, structural fire-fighting gloves could be purchased through their uniform allowance. Similarly, employees could acquire protective hoods.

Under these facts we do not find that Akron's conduct toward appellants rises to that level of "egregious conduct" constituting an intentional tort. In the absence of such a showing, the court correctly determined that appellants' tort claims against Akron were barred by R.C. 4123.74 and 4123.741.

Accordingly, we find no error in the court's granting of summary judgment to Akron on appellants' tort claims.

## Contract Claims

Appellants next contend that Akron breached the collective bargaining agreement with the Akron Firefighters Association, Local 330, of which they are members. Article VIII, "Wages and Related Benefits," Section Two, Paragraph C, states:

"The city shall continue to provide all required safety equipment including helmet and lined boots, fire coat, gloves, night hitch, and any further safety equipment required in the future."

Appellants argue that this clause imposed a duty on Akron to provide its fire fighters with safety equipment satisfying NFPA minimum standards and that in failing to do so the city was in breach of the agreement. Finding that appellants had failed to utilize the grievance and binding arbitration procedures contained in

Article XIII of the collective bargaining agreement, the court dismissed these actions pursuant to Civ.R. 12(B)(6).

As a general rule, the grievance procedures of a collective bargaining agreement must be exhausted as a prerequisite to any civil action against the employer. *Grubbs v. Pennsylvania RR. Co.* (C.A. 6, 1970), 427 F.2d 138, 139, citing *Ladd v. New York Cent. Rd. Co.* (1960), 170 Ohio St. 491, 504–505, 11 O.O.2d 245, 251–252, 166 N.E.2d 231, 239–240. See, also, Annotation (1960), 72 A.L.R.2d 1441. In the area of public employment, this rule is codified at R.C. 4117.10. When a collective bargaining agreement between a public employer and an exclusive representative of the employees provides for binding arbitration of grievances, the "public employers, employees and employee organizations are subject solely to that grievance procedure."

Appellants point out that there are exceptions to this general rule. These exceptions occur when pursuit of the grievance procedures would be in vain. Such an exception was recognized in *Glover v. St. Louis–San Francisco Ry. Co.* (1969), 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519, wherein the court found that the employer and the union were acting in concert to prevent the employees from pursuing their contractual remedies. In the present case, appellants never filed a grievance. Therefore, there can be no showing that the union failed to represent their interests or that resort to the grievance procedures would be "absolutely futile." *Id.,* 393 U.S. at 331, 89 S.Ct. at 551, 21 L.Ed.2d at 524.

Appellants would have us sever the collective bargaining agreement into separate components. They desire to assert one part, an alleged covenant by Akron to provide a certain level of "safety equipment," yet disregard the procedures for redressing a breach of the agreement. In the absence of ambiguity or some legal infirmity, courts will give effect to contracts in their entirety. *Erie Ins. Group v. Nationwide Mut. Ins. Co.* (1989), 65 Ohio App.3d 741, 753, 585 N.E.2d 464, 470–471; *Ford Motor Co. v. John L. Frazier & Sons Co.* (1964), 8 Ohio App.2d 158, 161, 29 O.O.2d 379, 381, 196 N.E.2d 335, 337–338. It is not within a court's prerogative to sever a contract and disregard, at its whim, a valid portion.

Accordingly, we find no error in the court's dismissal of appellants' breach of contract claim.

### Constitutional Claims

Finally, appellants contend that Akron, in causing or contributing to their injuries, denied them substantive due process in violation of Section 1983, Title 42, U.S.Code.

In *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662, the United States Supreme Court rejected petitioner's contention that negligent conduct by a government official can give rise to a due process violation supporting a Section 1983 action. The court noted that " '[w]here a government official's act in causing injury to life, liberty, or property is merely negligent, "no procedure for compensation is constitutionally required." ' " *Id.* at 474 U.S. at 333, 106 S.Ct. at 666, 88 L.Ed.2d at 669, quoting *Parratt v. Taylor* (1981), 451 U.S. 527, 548, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420, 437 (Powell, J., concurring in result).

In *Collins v. Harker Hts.* (1992), 503 U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261, a municipal employee brought a Section 1983 action against the city for a work-related injury. A unanimous court held that the Due Process Clause does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.,* 503 U.S. at ——, 112 S.Ct. at 1070, 117 L.Ed.2d at 275. The protection afforded by the Due Process Clause is in prohibiting "*deliberate* decisions of governmental officials to deprive a person of life, liberty, or property." (Emphasis *sic.*) *Id.* at fn. 10.

Having already determined that the facts of this case do not support appellants' intentional tort claims against Akron, they do not support a "deliberate" deprivation of life, liberty, or property giving rise to a cause of action under Section 1983, Title 42, U.S.Code.

### Procedural Claim

Last, Kelley contends the trial court erred in failing to consider his second amended complaint when ruling on Akron's motion. The city argues that Kelley, in failing to seek leave of court to file his second amended complaint as required by Civ.R. 15(A), is precluded from raising this issue on appeal. Kelley points out that Civ.R. 15(A) provides that "[l]eave of court shall be freely given when justice so requires."

We find any such error by the court to be harmless. Except for the addition of a new claim in his second amended complaint, we find no substantive difference between the two complaints as they relate to Kelley's claims against Akron. In his second amended complaint, Kelley added a cause of action against the manufacturer of the fire-fighter coat and the city in supplying said coat. Akron's alleged wrongful conduct in providing the coat was addressed in the third claim of Kelley's first amended complaint. Pursuant to R.C. 2309.59 and Civ.R. 61, this court may not reverse the trial court unless a substantive right is affected. *Leichtamer v. Am. Motors Corp.* (1981), 67 Ohio St.2d 456, 474–475, 21 O.O.3d 285, 296–297, 424 N.E.2d 568, 581; *State ex rel. Avellone v. Bd. of Commrs. of Lake Cty.* (1989), 45 Ohio St.3d 58, 62, 543 N.E.2d 478, 482.

Having reviewed appellants' claims against Akron and the assignments of error related thereto, appellants' first through seventh assignments of error are overruled.

Small and Levinson's

Assignment of Error VIII

"The trial court erred in granting defendant Horace Small Manufacturing Co. and defendant Levinson [*sic*] Company's motion for summary judgment as there existed genuine issues of material fact and defendants were not entitled to judgment as a matter of law."

Kelley asserted claims sounding in negligence, implied warranty and strict liability against Small and Levinson's, the respective manufacturer and supplier of the Mr. Two–Ply pants worn by Kelley when he was injured. In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 320, 4 O.O.3d 466, 468, 364 N.E.2d 267, 270, the court recognized that implied warranty and strict liability are "virtually indistinguishable." In either case, it is well established that plaintiff must prove:

" ' * * * (1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and *proximate cause* of the plaintiff's injuries or loss.' " (Emphasis added.) *Id.* at 321, 4 O.O.3d at 468, 364 N.E.2d at 270, quoting *State Auto Mut. Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 65 O.O.2d 374, 304 N.E.2d 891, paragraph two of the syllabus.

The NFPA guidelines set two separate standards for fire-fighters' uniform pants. These standards relate to flammability and heat resistance. In response to the motion for summary judgment of Small and Levinson's, Kelley presented the results of testing performed on the pants. Although the pants failed to satisfy the minimum flammability requirements set by NFPA, they complied with the standard for heat resistance.

Kelley has never made any assertion that the pants he was wearing ignited. The court specifically noted that the actual pants "did not ignite or char or melt or flow or become brittle." Therefore, the burns occurring to Kelley's legs and thighs resulted from radiant heat through his pants. But, as already noted, the test results demonstrated that the pants complied with the NFPA standard for heat resistance. Therefore, the court properly concluded that Kelley could not show that the alleged defect in the pants (noncompliance with NFPA standards for flammability) was the "direct and proximate cause" of his injuries. *Temple, supra.* Having failed to present sufficient evidence that a genuine issue existed as to proximate cause, an essential element for which

Kelley carried the burden of proof, summary judgment was appropriate. Civ.R. 56(E); *Celotex, supra.*

This assignment of error is therefore overruled.

Cairns

Assignment of Error IX

"The trial court erred in granting defendant Cairns' motion for summary judgment as there existed genuine issues of material fact and defendant Cairns and Brothers was not entitled to judgment as a matter of law."

Cairns is the manufacturer of the Model 660c Metro helmets worn by appellants when they sustained their injuries. While making no claim that the helmets were intrinsically defective, appellants argue the helmets should have been accompanied by a warning that protective hoods would provide additional protection from injury.

A necessary element in all products liability cases is proof of a causal relationship between the alleged defect and the resulting injury. *Hargis v. Doe* (1981), 3 Ohio App.3d 36, 37, 3 OBR 38, 39–40, 443 N.E.2d 1008, 1011. A manufacturer is liable when it "has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect." *Temple,* 50 Ohio St.2d at 325, 4 O.O.3d at 471, 364 N.E.2d at 273; see, also, *Sams v. Englewood Ready–Mix Corp.* (1969), 22 Ohio App.2d 168, 51 O.O.2d 315, 259 N.E.2d 507. Hence, we have previously held that a manufacturer has no duty to warn of patent defects. *Taylor v. Yale & Towne Mfg. Co.* (1987), 36 Ohio App.3d 62, 63, 520 N.E.2d 1375, 1377.

In the present case, both Kelley and Jackson acknowledged in deposition testimony their awareness that protective hoods would provide additional protection. In affidavits submitted in response to Cairns' motion for summary judgment, both appellants asserted that they did not know, prior to their injuries, that protective hoods were an "important accessory" to their helmets. Appellants contend their affidavits raised a genuine factual issue for trial. We disagree. A party may not create a factual issue, thereby avoiding summary judgment, by merely submitting an affidavit recanting his prior sworn testimony. *Massey v. Southland Corp.* (Oct. 9, 1991), Lorain App. No. 91CA005028, unreported, at 3–4, 1991 WL 208438. See, also, *Radobenko v. Automated Equip. Corp.* (C.A. 9, 1975), 520 F.2d 540, 544. Additionally, Akron Fire Department's Uniform Manual lists NFPA-compliant protective hoods as optional equipment which individual fire fighters may acquire and for which they may be reimbursed by the city.

Having failed to present sufficient evidence demonstrating that the lack of a protective hood was a latent defect, giving rise to Cairns' duty to provide an adequate warning, the trial court properly granted summary judgment. See Civ.R. 56(E); *Celotex, supra.*

## Best Manufacturing

### Assignment of Error X

"The trial court erred in excluding testimony of the NIOSH standard as evidence of defendant Best Manufacturing's negligent design and manufacture of the gloves and their causal relationship to plaintiff Kelley's hand injuries."

In addition to the NFPA standards for fire-fighters' gloves, Kelley attempted to introduce standards adopted for the National Institute of Occupational Safety and Health ("NIOSH"). In response to Best's objection, the trial court ruled that the NIOSH standards would be admitted if Kelley could demonstrate "foundationally that it is accepted custom [and] practice within the industry." After permitting Kelley to proffer relevant testimony, the trial court sustained Best's objection, refusing "testimony on the NIOSH standards."

Kelley contends that the NIOSH standards, by their very title, are "national" standards and therefore evidence of the industries' custom and practice. We do not agree that the use of "national" in the title connotes an accepted practice. Additionally, the report submitted by Kelley, as evidence of these standards, is entitled "The *Development* of Criteria for Firefighters' Gloves." (Emphasis added.) The disclaimer contained on page ii of the report states:

"The opinions, finding and conclusions expressed or implied in this report are those of Arthur D. Little, Inc. (ADL) and not necessarily those of the National Institute for Occupational Safety and Health (NIOSH)."

Given the trial court's superior vantage point, it enjoys considerable discretion in the admission or exclusion of evidence and will not be reversed absent a clear abuse that has materially prejudiced the defendant. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 302, 224 N.E.2d 126, 130, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281; *Humphrey v. State* (1984), 14 Ohio App.3d 15, 19, 14 OBR 18, 22–23, 469 N.E.2d 981, 986. In light of the report's own disclaimer, we find no abuse in the trial court's refusal to accept the NIOSH standards as accepted custom and practice.

Additionally, even should it be found that the court erred in excluding admission of, and testimony concerning, the NIOSH standards, we would be compelled to find such error harmless. Unless an error in the exclusion of evidence has affected a party's substantial rights, such error will be deemed

harmless. Civ.R. 61; see *Ferguson v. Owens* (1985), 27 Ohio App.3d 155, 27 OBR 187, 500 N.E.2d 396; *State ex rel. Avellone v. Bd. of Commrs. of Lake Cty.* (1989), 45 Ohio St.3d 58, 62, 543 N.E.2d 478, 482. In the present case, Kelley demonstrated that the Nitty Gritty 93 NFW gloves failed to comply with NFPA standards. The NFPA standards were acknowledged by ample testimony to be the applicable standards for structural fire-fighting gloves. Therefore, the gloves' failure to comply with the NIOSH standards was cumulative evidence.

Kelley's tenth assignment of error is therefore overruled.

### Assignment of Error XI

"The trial court erred in instructing the jury to disregard the NFPA standards in plaintiff's strict liability-design defect claim."

In its charge to the jury, the court stated:

"[T]he failure to comply with a recommended performance standard such as the National Fire Protection Association is not relevant and not to be considered by you in determining strict liability for design defect."

While failing to specifically object to this portion of the court's charge, Kelley contends that instructing the jury to ignore industry standards in a strict liability claim constitutes plain error.

Unlike product liability claims based on negligence, strict liability is not predicated upon the breach of a standard of care. See 76 Ohio Jurisprudence 3d (1987) 568, Products Liability, Section 135. Admission of industrial standards may lead the trier of fact to examine a defendant-manufacturer's compliance or noncompliance with the standards. The focus of the examination is thus drawn away from the product, and whether it is inherently defective, to a focus of whether the manufacturer was at fault in failing to meet industry standards. This results in concepts of fault, more associated with negligence, becoming impermissibly infused into a strict product liability case. See, generally, *Bailey v. V & O Press Co.* (C.A. 6, 1985), 770 F.2d 601 (applying Ohio law); *Majdic v. Cincinnati Machine Co.* (1988), 370 Pa.Super. 611, 537 A.2d 334; *Santiago v. Johnson Machine & Press Corp.* (C.A. 3, 1987), 834 F.2d 84; *Mitchell v. Hyster Co.* (Jan. 24, 1990), Hamilton App. No. C–880626, unreported, at 5, 1990 WL 4265; Annotation, Products Liability: Admissibility of Defendant's Evidence of Industry Custom or Practice in Strict Liability Action (1986), 47 A.L.R.4th 625, Section 2 *et seq.*

A limiting instruction on the use of industry standards in strict product liability cases is therefore appropriate. The court should advise the trier of fact that a defendant-manufacturer's compliance or noncompliance with industry standards is not the relevant inquiry. Rather, the focus must remain on the

product. While industry standards may provide some evidence of alternative designs, they are not to be considered a manufacturer's standard of care, unless such standard is imposed by law.

■ The overall instructions of the trial court did nothing more than advise the jury that the NFPA standards should not be considered a standard of care owed Kelley by Best.

Accordingly, this assignment of error is overruled.

### Assignments of Error XII, XIII and XIV

"XII. The trial court committed prejudicial error in instructing the jury on intervening superseding causes."

"XIII. The trial court erred in instructing the jury on assumption of risk and contributory negligence."

"XIV. The trial court committed prejudicial error as the manner in which it instructed the jury was tainted, biased, improper and an abuse of discretion."

At the conclusion of the court's charge to the jury, Kelley specifically objected only to the court's failure to instruct on his cause of action in warranty. (Not raised on appeal.) Kelley then made a general objection "to the nature of the jury instructions" in total.

■ Pursuant to Civ.R. 51(A), a jury instruction may not be challenged on appeal unless a specific objection is raised prior to jury deliberations. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001, paragraph one of the syllabus. In *Singfield v. Thomas* (1991), 28 Ohio App.2d 185, 187, 57 O.O.2d 268, 269–270, 275 N.E.2d 644, 645, this court stated:

"A general exception to instructions, without stating any ground therefor, fails to comply with the plain command of the rule [Civ.R. 51(A) ] that the grounds of objection must be stated 'distinctly,' and presents nothing for review." (Citations omitted.)

While in extraordinary cases the plain error exception may apply, *Cleveland Elec. Illum. Co. v. Astorhust Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800–801, Kelley makes no assertion of plain error in these assignments of error.

Accordingly, Kelley's twelfth, thirteenth, and fourteenth assignments of error are overruled.

Having reviewed and overruled each of appellants' assigned errors, the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.