UNITED STATES AVIATION UNDERWRITERS, INC., Appellant and Cross–Appellee,

v.

B.F. GOODRICH COMPANY, Appellee and Cross–Appellant.

[Cite as *U.S. Aviation Underwriters, Inc. v. B.F. Goodrich Co.*, 149 Ohio App.3d 569, 2002-Ohio-5429.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20873.

Decided Oct. 9, 2002.

570

Donald S. Varian Jr., for appellant and cross-appellee.

S. Stuart Eilers, Elizabeth B. Wright and Andrew H. Cox, for appellee and cross-appellant.

---

BAIRD, Judge.

{¶ 1} Appellant, United States Aviation Underwriters, Inc. ("USAU"), appeals from the judgment of the Summit County Court of Common Pleas. We affirm.

I

{¶ 2} On January 9, 1997, Comair Airlines Flight 3272, en route from Cincinnati, Ohio, to Detroit, Michigan, crashed outside Monroe, Michigan, due to ice buildup on the wings of the aircraft. The twenty-six passengers and three members of the flight crew were killed in the crash.

{¶ 3} The airplane was an EMB–120 turboprop airplane, manufactured by Embraer Embresa Brasileira de Aeronautica, S.A. ("Embraer"). The B.F. Goodrich Co. ("Goodrich") is a manufacturer of pneumatic deicing boots, which were installed as equipment on Flight 3272. Pneumatic deicing boots are rubber tubes, which, when activated, inflate with air and expand, cracking and removing ice that has accumulated on the wing of an airplane.

{¶ 4} At the time of the crash, Comair was insured by the appellant insurance company, USAU. USAU settled the claims with the victims' families, and Embraer contributed to the settlements. On January 8, 1999, USAU filed a complaint against Goodrich in the Summit County Court of Common Pleas, seeking contribution and indemnification, alleging that the deicing boots and the deicing system were defective. The complaint specifically alleged eleven causes of action, concerning claims as to both a design defect and a failure to warn due to improper instructions. The matter proceeded to a jury trial, commencing on October 29, 2001.

{¶ 5} Goodrich moved for directed verdict after USAU's opening statement. The trial court granted the motion for directed verdict on the claims concerning a design defect, finding that, because USAU conceded that the deicing boots were not in use and had not been activated prior to the crash, USAU could not prove causation. The trial court denied the motion for directed verdict on the claims based upon improper instructions, and those claims were submitted to the jury. The jury found in favor of Goodrich, finding that Goodrich had not violated its duty to warn. The court subsequently dismissed the case on its merits.

{¶ 6} This appeal followed. USAU raises four assignments of error for review. Goodrich submits two cross-assignments of error. We address USAU's first three assignments of error together for ease of review.

## II

### USAU's First Assignment of Error

{¶ 7} "The trial court erred under the Ohio Supreme Court's extremely high 'great caution' standard when it directed verdicts, following plaintiff's opening statement, on the plaintiff's design defect, negligence and breach of warranty causes of action stated against the defendant which provided the design for an aircraft which caused it to crash while flying in icing conditions, and the plaintiff described evidence to support each element of its causes of action."

### USAU's Second Assignment of Error

{¶ 8} "The trial court erred under the Ohio Supreme Court's extremely high 'great caution' standard when it directed verdicts, following plaintiff's opening statement, on the plaintiff's cause of action that the crash occurred as a result of the aircraft's failure to conform with representations made by the defendant designer that the aircraft could safely fly in the icing conditions which caused the crash, and the plaintiff described evidence to support each element of its causes of action."

### USAU's Third Assignment of Error

{¶ 9} "The trial court erred under the Ohio Supreme Court's extremely high 'great caution' standard when it directed verdicts, following plaintiff's opening statement, on the plaintiff's design defect, negligence and breach of warranty causes of action stated against the manufacturer/supplier of an aircraft's ice protection system components where the plaintiff described evidence to support each element of its causes of action."

{¶ 10} In its first three assignments of error, USAU argues that the trial court erred when it granted directed verdicts after its opening statement. We disagree.

{¶ 11} We review a trial court's ruling on a motion for directed verdict de novo because it presents us with a question of law. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155. A motion for directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252.

{¶ 12} Pursuant to Civ.R. 50(A)(4), a directed verdict is properly granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]" Where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. However, when the party opposing the motion for directed verdict has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141.

{¶ 13} When a party moves for a directed verdict on the opening statement of counsel, the trial court "should exercise great caution in sustaining [the] motion." *Brinkmoeller v. Wilson* (1975), 41 Ohio St.2d 223, 70 O.O.2d 424, 325 N.E.2d 233, syllabus. "[I]t must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made." Id. The trial court does not commit error in granting a defendant's motion for directed verdict, made at the close of plaintiff's opening statement, "if, engaging in every reasonable inference from facts favorable to the party against whom the motion is directed, the proposed proof would not sustain a claim upon which relief could be granted." *Phillips v. Borg–Warner Corp.* (1972), 32 Ohio St.2d 266, 268, 61 O.O.2d 493, 291 N.E.2d 736.

{¶ 14} The Ohio Products Liability Act, R.C. 2307.71 et seq., defines a "product liability claim" as "a claim that is asserted in a civil action and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

{¶ 15} "(1) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

{¶ 16} "(2) Any warning or instruction, or lack of warning or instruction, associated with that product;

{¶ 17} "(3) Any failure of that product to conform to any relevant representation or warranty." R.C. 2307.71(M).

{¶ 18} A plaintiff cannot recover on a product liability claim unless he establishes, by a preponderance of the evidence, that the product was defective in manufacture or construction, was defective in design or formulation, was defec-

tive due to inadequate warning or instruction, or was defective because it did not conform to a representation made by its manufacturer. R.C. 2307.73(A)(1). A plaintiff must also demonstrate that the defect was a proximate cause of the injuries or loss. R.C. 2307.73(A)(2); *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988) 37 Ohio St.3d 1, 6, 523 N.E.2d 489. Proximate cause "has been defined as: 'That which immediately precedes and produces the effect, as distinguished from a remote, mediate, or predisposing cause; that from which the fact might be expected to follow without the concurrence of any unusual circumstance; that without which the accident would not have happened, and from which the injury or a like injury might have been anticipated.'" *Hunt v. Marksman Products* (1995), 101 Ohio App.3d 760, 763, 656 N.E.2d 726, quoting *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 143, 539 N.E.2d 614.

{¶ 19} In this case, Goodrich moved for summary judgment prior to trial, claiming that USAU could not prove causation. The trial court denied that motion, finding that there was insufficient evidence to determine whether the deicing boots were activated. USAU argues that the subsequent directed verdicts after opening statement were error because the trial court had determined the same issue just prior to trial, and the grant of the directed verdicts was a complete reversal from its summary judgment ruling. However, USAU conceded during opening statement that the deicing boots were not in use and had not been activated prior to the time of the crash. Goodrich then moved for directed verdict, arguing that USAU could not prove causation. USAU argued that Goodrich, as a supplier and manufacturer of the deicing equipment, may be found liable for the defective final product of the airplane, regardless of whether the deicing boots were in use. USAU claimed that Goodrich's deicing design left areas of the aircraft's wing unprotected, and that the crash still would have occurred, even if the pilots had activated the boots.

{¶ 20} It is axiomatic that "[a] necessary element in all products liability cases is proof of a causal relationship between the alleged defect and the resulting injury." *Kelley v. Cairns & Bros., Inc.* (1993), 89 Ohio App.3d 598, 610, 626 N.E.2d 986, citing *Hargis v. Doe* (1981), 3 Ohio App.3d 36, 37, 3 OBR 38, 443 N.E.2d 1008. USAU cannot demonstrate that Goodrich's alleged defective design of the deicing system proximately caused the crash if Goodrich's deicing system had not been activated by the flight crew. Construing USAU's opening statement in favor of USAU, the proposed proof would not sustain a claim upon which relief could be granted because USAU cannot prove the essential element of proximate cause.

{¶ 21} USAU relies on *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 617 N.E.2d 1068, for the proposition that a manufacturer of a component part may be held liable for a defective final product. Here, USAU

contends that once Goodrich's deicing boots were incorporated into the plane, Goodrich may be liable for damages caused by the airplane itself, regardless of whether the boots were in use. USAU's reliance on *Leibreich* is misplaced.

{¶ 22} In *Leibreich*, the defendant manufactured a refrigeration unit that was incorporated into a florist's delivery truck. In order to keep the refrigeration unit running while the truck stopped for deliveries, it was necessary to keep the truck's transmission in neutral. One day, while the truck was in neutral, the parking brake failed, and the truck rolled down an incline, causing injuries. The Ohio Supreme Court reviewed the definition of a "manufacturer" under the Ohio Products Liability Act and found that the defendant manufacturer of the refrigeration unit in that case was a manufacturer for purposes of imposing strict liability because it assembled components into a design which created a product. *Leibreich* at 271, 617 N.E.2d 1068.

{¶ 23} We find that this case is distinguishable from *Leibreich*. In this case, Goodrich does not contend that it is not a manufacturer for purposes of imposing strict liability for a defective product. Moreover, in *Leibreich*, the refrigeration unit was in use at the time of the accident, whereas USAU conceded that the deicing boots were not activated and were not in use. The Supreme Court did not address the issue of causation as to whether the defendant manufacturer could be held liable for a design defect if the accident occurred while the refrigeration unit was off. Accordingly, USAU's argument is without merit.

{¶ 24} The directed verdict was properly granted on the design defect claims because USAU's proposed proof would not sustain a claim for a design defect. USAU's first, second, and third assignments of error are overruled.

### USAU's Fourth Assignment of Error

{¶ 25} "The trial court's erroneous directed verdicts on the opening statement of counsel, and certain inconsistent evidentiary rulings which followed them, materially prejudiced the prosecution of the plaintiff's remaining inadequate instructions cause of action stated against the defendant."

{¶ 26} In its fourth assignment of error, USAU asserts that the trial court's directed verdicts and certain evidentiary rulings were error and prejudiced its remaining cause of action on failure to warn due to inadequate instructions. We have already addressed USAU's arguments concerning the directed verdicts; therefore, we will address only the portion of USAU's argument that concerns the admission or exclusion of evidence.

{¶ 27} The trial court has broad discretion in the admission and exclusion of evidence. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126. An appellate court will not disturb evidentiary rulings

absent an abuse of discretion. Id. An abuse of discretion signifies more than merely an error in judgment; instead, it involves "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.

{¶ 28} USAU essentially challenges two evidentiary rulings of the trial court. First, USAU argues that the trial court erred when evidence was admitted that Comair still flies the EMB–120 and that USAU still insures these airplanes. USAU contends that this evidence gave the jury an impression that USAU and its insured considered the plane to be safe. The portion of the record to which USAU refers in demonstrating this error contains the opening statements of counsel. This statement was made during Goodrich's opening statement. It is well settled that opening statements are not evidence and should not be considered as such. See *Eller v. Wendy's Internatl., Inc.* (2000), 142 Ohio App.3d 321, 333, 755 N.E.2d 906; *State v. Frazier* (1995), 73 Ohio St.3d 323, 338, 652 N.E.2d 1000. Moreover, counsel for USAU failed to object to the statement, and the trial court instructed the jury that opening statements are not evidence and should not be treated as evidence. The jury is presumed to follow the instructions of the trial court. *State v. Raglin* (1998), 83 Ohio St.3d 253, 264, 699 N.E.2d 482. Thus, USAU cannot show that the trial court abused its discretion with regard to counsel's statement that Comair still flies EMB–120's and USAU continues to insure them.

{¶ 29} USAU also argues that the trial court erred in various rulings on the admission of government-issued airworthiness directives. USAU cites various portions of the transcript where evidence was either excluded or admitted, which USAU claims to be error. However, USAU fails to demonstrate how the trial court's rulings on these particular evidentiary rulings was an abuse of discretion. As the appellant, USAU has the burden of affirmatively demonstrating error on appeal. See *Angle v. W. Res. Mut. Ins. Co.* (Sept. 16, 1998), 9th Dist. No. 2729–M, at 2, 1998 WL 646548; *Frecska v. Frecska* (Oct. 1, 1997), 9th Dist. No. 96CA0086, at 4, 1997 WL 625488. Pursuant to App.R. 16(A)(7), an appellant must "demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Taylor* (Feb. 9, 1999), 9th Dist. No. 2783–M, at 7, 1999 WL 61619. See, also, Loc.R. 7(A)(7). USAU has failed to support its argument with any legal authority demonstrating that the trial court abused its discretion in these evidentiary rulings. Accordingly, USAU's fourth assignment of error is overruled.

#### Goodrich's First Cross–Assignment of Error

{¶ 30} "The trial court erred in denying Goodrich's motion for summary judgment."

#### Goodrich's Second Cross–Assignment of Error

{¶ 31} "The trial court erred in denying Goodrich's motions for a directed verdict on USAU's contribution claim at trial."

{¶ 32} Our dispositions of USAU's assignments of error render Goodrich's cross-assignments of error moot. We therefore decline to address them. See App.R. 12(A)(1)(c).

### III

{¶ 33} USAU's four assignments of error are overruled. Goodrich's cross-assignments of error are rendered moot. Accordingly, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

SLABY, P.J., and BATCHELDER, J., concur.