**[Cite as *Bank of New York v. Nutter*, 2020-Ohio-6988.]**

STATE OF OHIO         )
                     )ss:
COUNTY OF MEDINA    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

THE BANK OF NEW YORK

    Plaintiff

    v.

NICHOLAS NUTTER, et al.

    Appellees

    and

SHALE CREEK MASTER ASSOCIATION

    Appellant

C.A. No.      19CA0063-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    18CIV0395

DECISION AND JOURNAL ENTRY

Dated: December 31, 2020

CARR, Judge.

**{¶1}** Appellant, Shale Creek Master Association ("Shale Creek"), appeals the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** This dispute concerns a residential property situated within Shale Creek, a homeowner's association in Medina, Ohio. On April 18, 2018, the Bank of New York Mellon ("the Bank") filed a foreclosure action against Nicholas and Amy Nutter, as well as several other defendants including Shale Creek. The Nutters filed an answer generally denying the allegations in the complaint. Shale Creek filed an answer asserting an interest in the property but noting that the Nutters were current on their fees.

{¶3}   With leave of court, Shale Creek filed an amended answer and a cross-claim for foreclosure on December 18, 2018.   Shale Creek alleged that pursuant to its declaration of covenants ("the Declaration") and bylaws, the Nutters were responsible for association maintenance fees, including collection costs and attorney fees.   Shale Creek alleged that as of December 4, 2018, the Nutters had failed to pay collection costs and attorney fees owed to Shale Creek in the amount of $1,814.80.   Shale Creek contended that pursuant to its Declaration, it filed a valid lien against the property on November 29, 2018.   Shale Creek further alleged that pursuant to R.C. 5312.11, the provisions in Shale Creek's governing documents that make defaulting owners responsible for attorney fees were enforceable.   In praying for relief, Shale Creek asked the trial court to find that it had "a good, valid, and subsisting lien[]" and that all liens be marshalled, and the property ordered sold.   The Nutters generally denied the allegations set forth in the cross-claim and asserted numerous affirmative defenses.

{¶4}   The matter proceeded to trial before a magistrate.   When the parties appeared for trial, the Bank and the Nutters stipulated that they had reached a loan modification agreement and that the Bank's complaint would be dismissed.   The matter proceeded to trial on Shale Creek's cross-claim.

{¶5}   On May 21, 2019, the magistrate issued a decision ruling in favor of the Nutters. The magistrate noted that Shale Creek had previously initiated an action in the Medina Municipal Court when the Nutters fell behind on their obligations under the Declaration.   Shale Creek obtained a judgment that was satisfied in full by the Nutters.   Thereafter, the Nutters set up automatic monthly withdrawals to pay their monthly assessments to Shale Creek.   The Nutters' account history indicated that they had a zero balance as of April 23, 2018, meaning they were current on their monthly assessments as well as their annual general assessment.   The magistrate

found that the deficit at issue in this case began on May 2, 2018, when the Nutters were assessed fees for the filing of the notice of satisfaction in the Medina Municipal Court case. On November 29, 2018, Shale Creek filed a lien in the amount of $1,820.20 for unpaid assessments for legal fees. In addition to the filing of the notice of satisfaction in the Medina Municipal Court case, the Nutters were also assessed for legal fees in relation to the instant foreclosure action.

{¶6} While the magistrate acknowledged that the Declaration gave Shale Creek a right to recover attorney fees for the filing of the notice of satisfaction in the Medina Municipal Court case, it concluded that Shale Creek had failed to comply with the notice requirements set forth in the Declaration prior to assessing said fees. With respect to the assessments for attorney fees relating to the litigation of the instant matter, the magistrate concluded that the Declaration did not provide for Shale Creek to recover attorney fees resulting from participation in an individual lot owner's foreclosure case. The magistrate further determined that even if Shale Creek had established that it was entitled to enforce a lien on the Nutters' property, foreclosure was not an equitable remedy under the circumstances of this case.

{¶7} Shale Creek filed 13 objections to the magistrate's decision and supported its objections with a trial transcript. The Nutters filed a brief in opposition to Shale Creek's objections.

{¶8} On July 11, 2019, the trial court issued a decision overruling Shale Creek's objections and adopting the magistrate's decision. Although the trial court modified some of the magistrate's findings, it ultimately determined that Shale Creek was not entitled to recover attorney fees in relation to the Medina Municipal Court case, nor was Shale Creek permitted under the Declaration to recover attorney fees for its participation in the instant foreclosure action. With respect to notice, the trial court found that "Shale Creek did not send any written notice of the legal

fee assessment to the Nutters in the form and substance as set forth in R.C. 5312.11 and/or Section 7.6.1 of the Declaration[.]" (Emphasis omitted.) In regard to equitable concerns, the trial court determined that "it is neither fair nor equitable for Shale Creek to foreclose on the Nutters' home[]" under the circumstances of this case.

{¶9} On appeal, Shale Creek raises five assignments of error.

II.

**General Standard of Review**

{¶10} This Court generally reviews a trial court's action regarding a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. When the issue presented for appellate review presents purely a question of law, this Court employs a de novo standard of review. *Lucas v. Ford Motor Co.*, 9th Dist. Summit No. 28622, 2018-Ohio-3765, ¶ 16.

II.

**ASSIGNMENT OF ERROR I**

THE LOWER COURT ERRED IN INVALIDATING LIENS SOUNDING UNDER R.C. [] 5312.12 WHERE SHALE CREEK'S LIENS REMAIN LEGALLY VALID, PURSUANT TO THE STATUTE'S EXPRESS LANGUAGE, UNLESS RELEASED, SATISFIED, OR INVALIDATED THROUGH AN ACTION, INITIATED BY THE OWNER, TO DISCHARGE THE LIEN.

**ASSIGNMENT OF ERROR II**

THE LOWER COURT ERRED IN FINDING THAT SHALE CREEK'S LIENS ARE INVALID AND/OR FORECLOSURE INEQUITABLE FOR WANT OF SPECIFIC NOTICE REQUIREMENTS CONTAINED IN SECTION 7.6.1 OF THE DECLARATION AND R.C. [] 5312.11 THAT UNIQUELY APPLY TO

"INDIVIDUAL ASSESSMENTS FOR DAMAGES AND ENFORCEMENT ASSESSMENTS" WHERE A SUBSISTING 5312 LIEN EXISTS.

{¶11} In its first assignment of error, Shale Creek contends that the trial court erred by disregarding R.C. 5312.12(A)/(B) concerning the existence of Shale Creek's subsisting statutory lien from 2016, and further acted beyond its authority when it failed to recognize that the Nutters waived the issue of the lien's validity by declining to file a discharge action pursuant to R.C. 5312.12(D). In its second assignment of error, Shale Creek contends that the trial court erred in finding that the notice requirements in R.C. 5312.11(C) and Section 7.6.1 of the Declaration were applicable in this case, given that Shale Creek maintained a subsisting lien from 2016. This Court disagrees with both assertions.

{¶12} Questions of statutory interpretation present issues of law and necessitate a de novo standard of review. *State v. Sanders*, 9th Dist. Medina No. 15CA0064-M, 2016-Ohio-8202, ¶ 4. A trial court's interpretation of a planned community's declaration also involves issues of law and is reviewed de novo. *Keltz v. Enchanted Hills Community Assn.*, 4th Dist. Highland No. 12CA16, 2014-Ohio-866, ¶ 13.

{¶13} R.C. 5312.11(A), which governs assessments on individual lots, provides that "[a]n owners association may assess an individual lot for * * * [c]osts associated with the enforcement of the declaration or the rules and regulations of the owners association, including, but not limited to, attorney's fees, court costs, and other expenses[.]"

{¶14} The notice requirements for such assessments are set forth in R.C. 5312.11(C), which provides as follows:

> Prior to imposing a charge for damages or an enforcement assessment pursuant to this section, the board of directors shall give the owner a written notice that includes all of the following:
>
> (1) A description of the property damage or violation;

(2) The amount of the proposed charge or assessment;

(3) A statement that the owner has a right to a hearing before the board to contest the proposed charge or assessment;

(4) A statement setting forth the procedures to request a hearing;

(5) A reasonable date by which the owner must cure a continuing violation to avoid the proposed charge or assessment, if such an opportunity to cure is applicable.

{¶15} Similar to R.C. 5312.11(C), Section 7.6.1 of the Declaration sets forth written notice requirements that must be satisfied prior to imposing an individual assessment pursuant to Section 7.5.4, which provides Shale Creek with the right to assess an individual for any costs associated with the enforcement of the Declaration, including, but not limited to, attorney fees and court costs.

{¶16} In support of its position that it had a subsisting lien, Shale Creek points to R.C. 5312.12(A), which states that "[t]he owners association has a lien upon the estate or interest in any lot for the payment of any assessment or charge levied in accordance with section 5312.11 of the Revised Code, as well as any related interest, administrative fees, enforcement assessments, collection costs, attorney's fees, and paralegal fees, that are chargeable against the lot and that remain unpaid ten days after any portion has become due and payable."

{¶17} In turn, R.C. 5312.12(B) provides as follows:

All of the following apply to a lien charged against a property pursuant to this section:

(1) The lien is effective on the date that a certificate of lien is filed for record in the office of the recorder of the county or counties in which the lot is situated, pursuant to authorization by the board of directors of the owners association. The certificate shall contain a description of the lot, the name of the record owner of the lot, and the amount of the unpaid assessment or charge. It shall be subscribed to by the president of the board or other designated representative of the owners association.

(2) The lien is a continuing lien upon the lot against which each assessment or charge is made, subject to automatic subsequent adjustments reflecting any

additional unpaid interest, administrative late fees, enforcement assessments, collection costs, attorney's fees, paralegal fees, and court costs.

(3) The lien is valid for a period of five years from the date of filing, unless it is sooner released or satisfied in the same manner provided by law for the release and satisfaction of mortgages on real property or unless it is discharged by the final judgment or order of a court in an action brought to discharge the lien as provided in this section.

(4) The lien is prior to any lien or encumbrance subsequently arising or created, except liens for real estate taxes and assessments of political subdivisions and liens of first mortgages that have been filed for record prior to the recording of the lien, and may be foreclosed in the same manner as a mortgage on real property in an action brought by the owners association.

{¶18} "An owner may commence an action for the discharge of the lien in the court of common pleas of the county in which all or a part of the property is situated if the owner believes that the liability for the unpaid assessment or charge for which the owners association filed a certificate of lien was improperly charged." R.C. 5312.12(D).

{¶19} The crux of Shale Creek's argument on appeal is that it maintained a subsisting lien from 2016 on the Nutters' property pursuant to R.C. 5312.12(A) and that the trial court erred in failing to recognize the validity of that lien absent one of the circumstances set forth in R.C. 5312.12(B)(3). Shale Creek suggests that the issue of whether it complied with the notice requirements in R.C. 5312.11(C) or in Section 7.6.1 is immaterial given that the subsisting lien from 2016 was never removed. Shale Creek further contends that the Nutters effectively forfeited any challenge to the validity of the 2016 lien because it never initiated an action to discharge the 2016 lien pursuant to R.C. 5312.12(D).

{¶20} As an initial matter, Shale Creek stated in its amended answer and cross-claim that it filed a lien against the Nutters' property pursuant to the Declaration on November 29, 2018. Shale Creek alleged that the Nutters had failed to pay collections costs as well as attorney fees and that, pursuant to R.C. 5312.11, the Declaration's provisions making owners responsible for

attorney fees were enforceable. Shale Creek concluded "[t]hat by virtue of the preceding, [it] secured a good, valid and subsisting lien upon the above-described premises." Notably, Shale Creek made no mention of R.C. 5312.12 in its cross-claim, nor did it specifically state that its theory of recovery was predicated on the recognition of a subsisting lien from 2016.

{¶21} During opening statements at trial, counsel for Shale Creek noted that the parties had been through "a couple cycles of delinquency" and that they were in court due to "a failure to fully resolve collection costs and attorney's fees owed to [Shale Creek.]" The issue of whether Shale Creek provided the Nutters with proper notice was litigated at trial. During cross-examination of Shale Creek's property manager, the magistrate interjected and inquired about the relevance of collection letters sent to the Nutters in 2015 and 2016, given that the evidence established that the Nutters were current on their account as of April 2018. Shale Creek responded that the letters were "solely provided for context." Exhibits evidencing liens from 2013, 2016, and 2018 were presented at trial. When the trial court asked if the liens from 2013 and 2016 were satisfied, Shale Creek responded in the affirmative and indicated that it was "solely proceeding" on the 2018 lien.[1]

{¶22} The arguments raised in Shale Creek's first and second assignments of error are without merit. The trial court found that the Nutters' account with Shale Creek had a zero balance as of April 23, 2018, bringing the Nutters into full compliance with the Declaration. The deficit at issue in this case stemmed from the assessment of fees in May 2018 that were related to the

---

[1] In its objections to the magistrate's decision, Shale Creek argued it was not subject to the notice requirements in R.C. 5312.11(C) and Section 7.6.1 of the Declaration because it had a valid basis to assess the Nutters pursuant to Section 7.14 of the Declaration, which addressed delinquency and acceleration, as well as R.C. 5312.12. Shale Creek maintained that the Nutters "never fully resolved their owner account[.]" To the extent Shale Creek objected on the basis that it was entitled to recover due to the existence of a valid, subsisting lien from 2016, this marked a departure from statements made at trial.

filing of the notice of satisfaction in the Medina Municipal Court case. Prior to filing its amended answer and cross-claim, Shale Creek filed a lien against the property on November 29, 2018. At trial, Shale Creek indicated that it was "solely proceeding" on the 2018 lien and that the 2016 lien was offered simply for "context." Accordingly, Shale Creek was required to satisfy the notice requirements set forth in R.C. 5312.11(C) and Section 7.6.1 of the Declaration in order to assess new fees related to the enforcement of the Declaration. As Shale Creek did not present evidence demonstrating that it met the notice requirements under R.C. 5312.11(C) and Section 7.6.1 of the Declaration, the trial court properly concluded that it was not entitled to recover for costs and legal fees associated with the enforcement of the Declaration.

{¶23} Shale Creek's first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

THE LOWER COURT ERRED IN FINDING FORECLOSURE INEQUITABLLE WHERE SHALE CREEK'S LIENS WERE NOT SUBJECT TO AN ACTION TO DISCHARGE LIEN AND THE TRIAL COURT FOCUSED ON INTERESTS OF PARTIES OTHER THAN SHALE CREEK AND THE NUTTERS.

{¶24} In its third assignment of error, Shale Creek contends that the trial court erred in concluding that foreclosure was inequitable under the circumstances of this case. This Court disagrees.

{¶25} "A trial court's decision with respect to whether foreclosure is an equitable remedy is reviewed for an abuse of discretion." *Bank of New York Mellon v. Chappell*, 9th Dist. Lorain No. 17CA011114, 2018-Ohio-1879, ¶ 14. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶26} In its amended answer and cross-claim, Shale Creek prayed for various forms of relief, including that the liens on the property be marshalled and the property be ordered sold. This Court has recognized that foreclosure involves a two-step process where, in addition to establishing the existence of default, the trial court must then consider whether foreclosure is an equitable remedy. *See generally Chappell* at ¶ 13-14; *Waterford Pointe Condominium Assn. v. Reserve Domiciles, Ltd.*, 9th Dist. Summit No. 28766, 2019-Ohio-691, ¶ 28. Even assuming arguendo that Shale Creek satisfied all of the elements for foreclosure pursuant to a valid lien, we cannot say that the trial court abused its discretion in concluding that foreclosure was not an equitable remedy here. The evidence presented at trial showed that in addition to reaching a loan modification agreement with the Bank, the Nutters had taken affirmative steps to ensure that they were in good standing with Shale Creek. The Nutters set up automatic withdrawals to pay their monthly assessments and, as of April 2018, their account had a zero balance. The trial court did not abuse its discretion in concluding that foreclosure would be inequitable under these circumstances.

{¶27} The third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE LOWER COURT ERRED IN EXCLUDING SHALE CREEK'S UNCONTROVERTED COLLECTION POLICY WHERE THE COURT EFFECTIVELY IMPOSED A "PRESENT IN FACT WHEN ADOPTED" AUTHENTICATION REQUIREMENT WHEN SHALE CREEK'S REPRESENTATIVE TESTIFIED UPON PERSONAL KNOWLEDGE CONCERNING THE BOARD'S USE OF THE POLICY IN THIS CASE.

{¶28} In its fourth assignment of error, Shale Creek contends that the trial court erred when it excluded the exhibit purporting to be its collection policy. Shale Creek points to a number of cases, including *Christiana Trust v. Barth*, 9th Dist. Summit No. Lorain No. 16CA010959, 2017-Ohio-6924, in support of the proposition that a records custodian can properly authenticate

business records maintained by his or her company even when the records in question originated from a predecessor company. This Court disagrees.

{¶29} A trial court enjoys broad discretion in the admission and exclusion of evidence. *U.S. Aviation Underwriters, Inc. v. B.F. Goodrich Co.*, 149 Ohio App.3d 569, 2002-Ohio-5429, ¶ 27 (9th Dist.).

{¶30} Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "[P]roper authentication of a business record under Evid.R. 901(A) requires that a proponent of a document produce evidence sufficient to support a finding that the matter in question is what the proponent claims it to be, and to accomplish this, a witness must testify as to the regularity and reliability of the business activity involved in the creation of the record." *Barth* at ¶ 13, citing *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 24. While the witness is not required to demonstrate personal knowledge of the exact circumstances surrounding the preparation and production of the document, the witness must be "familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business." (Internal quotations omitted.) *Barth* at ¶ 13, quoting *State v. Baker*, 9th Dist. Summit No. 21414, 2003-Ohio-4637, ¶ 11, quoting *Keeva J. Kekst Architects, Inc. v. George*, 8th Dist. Cuyahoga No. 70835, 1997 WL 253171, *5 (May 15, 1997).

{¶31} At trial, Shale Creek's property manager, M.F., testified that the Nutters' account became delinquent when they failed to pay attorney fees for the filing of the answer to the complaint in this matter. M.F. further testified that the manner in which Shale Creek sought to

recover attorney fees, as well as any late fees associated with attorney fees, was set forth in a collection policy. The Nutters objected to the admission of the exhibit purporting to be Shale Creek's collection policy on the basis that it was not properly authenticated. The magistrate ultimately sustained the objection and excluded the collection policy from consideration. In its objections to the magistrate's decision, Shale Creek identified M.F. as its records custodian and stated that she had expansive knowledge of its records, including the collection policy. Shale Creek argued that M.F. "demonstrated knowledge of all aspects of property management for her company[]" and that she was not required to demonstrate personal knowledge as to the preparation and production of the collection policy. In overruling the objection, the trial court found that while M.F. testified that she was the property manager for Shale Creek, there was nothing in the trial transcript indicating that she served as records custodian. The trial court further noted that there was no evidence indicating that the policy was ever adopted by Shale Creek's board of directors or incorporated into its governing documents.

{¶32} Shale Creek has not demonstrated on appeal that the trial court abused its discretion in excluding the collection policy. Unlike the circumstances in *Barth*, this case does not involve a scenario where the witness testified that he or she had personal knowledge of the time and manner in which the business record was created. *See Barth* at ¶ 16. M.F. did not identify herself as a records custodian at trial. M.F. testified that all foreclosure actions were authorized by the board of directors and that, in her role as property manager, she was required to have personal knowledge of Shale Creek's governing documents. With respect to the exhibit purporting to be the collection policy, M.F. acknowledged that while the Declaration specified that the board of directors had authority to enact a collections policy, the collection policy was neither signed by the members of the board of directors, nor incorporated into its governing documents. M.F. acknowledged that

there was no evidence that the collection policy was adopted by the board. Although M.F. indicated that she was familiar with the collection policy and she frequently utilized it in her work, M.F. testified that its adoption and implementation would have preceded her involvement with Shale Creek. Under these circumstances, where M.F. was unable to testify as to whether the collection policy was formally adopted and implemented by the board of directors, we cannot say that the trial court's decision to exclude the collection policy was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d at 219.

{¶33} The fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR V**

THE LOWER COURT COMMITTED CUMULATIVE ERROR IN PREJUDICE TO SHALE CREEK'S SUBSTANTIAL LEGAL RIGHTS WHERE IT FAILED TO APPLY R.C. [] 5312.12, WRONGLY IMPOSED R.C. [] 5312.11(C) NOTICE REQUIREMENTS ON A SUBSISTING 5312 LIEN, WRONGLY EXCLUDED THE ASSOCIATIO[N] COLLECTION POLICY, AND/OR FAILED TO MARSHAL ALL SUBSISTING LIENS.

{¶34} In its final assignment of error, Shale Creek contends that reversal is necessary because the trial court committed cumulative error to the prejudice of its substantial rights. This Court disagrees.

{¶35} Under the doctrine of cumulative error, a trial court's judgment may be reversed if the cumulative effect of multiple errors results in the deprivation of constitutional rights even though each of the individual errors, standing alone, would not constitute grounds for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). The doctrine of cumulative error is not applicable in cases where there were not multiple errors. *See State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132. This Court has further recognized that "the cumulative error doctrine is not typically employed in civil cases." *J.P. v. T.H.*, 9th Dist. Lorain No. 14CA010715, 2016-Ohio-243, ¶ 35, quoting, *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 12AP-999, 2013-Ohio-

5140, ¶ 124. We are not persuaded that extending the cumulative error doctrine to the instant case is warranted as we rejected all of the errors assigned by Shale Creek above. *See J.P.* at ¶ 35.

{¶36} The assignment of error is overruled.

III.

{¶37} Shale Creek's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.


APPEARANCES:

ERICK J. NEVIN and ARTHUR F. FOTH, JR., Attorneys at Law, for Appellant.

J. C. RATLIFF, JEFF RATLIFF, ROCKY RATLIFF, and EDWIN M. BIEBLER, Attorneys at Law, for Appellees.