[Cite as *Kirkland Fin., L.L.C. v. Firestone*, 2024-Ohio-433.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| KIRKLAND FINANCIAL, LLC | | C.A. No. 30541 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MADGA FIRESTONE | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CV-2014-05-2242 |

DECISION AND JOURNAL ENTRY

Dated: February 7, 2024

CARR, Judge.

{¶1} Appellant, Magda Firestone, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The instant appeal arises out of a foreclosure action with a lengthy procedural history. In 1999, Steve Firestone acquired the property located at 1170 West Exchange Street in Akron, Ohio, via a warranty deed. Mr. Firestone obtained a loan from Norwest Mortgage, Inc. in order to facilitate the purchase of the property. The loan was secured by an open-end mortgage. The Norwest mortgage was signed by both Mr. Firestone and his wife, Magda Firestone. That same year, the Firestones conveyed the property to themselves for their joint lives by way of a quit claim deed.

{¶3} In 2001, Mr. Firestone commenced the process of refinancing the mortgage on the property. Mr. Firestone obtained a refinance loan from First NLC Financial Services, LLC. The

refinance loan was secured by a new mortgage, which was recorded on July 3, 2001. While there is no dispute that Mr. Firestone was the sole signatory of the note, the question of whether Ms. Firestone executed the mortgage is one of the central issues in this case.

{¶4} Mr. Firestone passed away in 2004. In 2006, CitiMortgage became the holder of the note and mortgage. The following year, CitiMortgage sent a default notice to Ms. Firestone. CitiMortgage filed a foreclosure action in 2008 but the case was eventually dismissed without prejudice in 2012.[1]

{¶5} In 2014, CitiMortgage initiated the instant foreclosure action naming the Firestones as defendants. CitiMortgage subsequently filed an amended complaint where, in addition to including counts pertaining to the breach of the note and its intent to foreclose, CitiMortgage set forth a number of alternative claims for relief, including equitable subrogation, equitable estoppel, and unjust enrichment. Ms. Firestone filed an answer generally denying the allegations in the complaint and setting forth a number of affirmative defenses.

{¶6} In 2018, Kirkland Financial LLC ("Kirkland") successfully moved to be substituted as party plaintiff on the basis that the note and mortgage at issue had been assigned to Kirkland.

{¶7} The matter proceeded to trial before a magistrate. At trial, Ms. Firestone challenged the legal validity of the note and mortgage as well as the authenticity of what purports to be her signature on the mortgage. After considering the evidence presented at trial, the magistrate determined that Ms. Firestone's signature on the mortgage was authentic and, further, that the signature was not obtained by fraud. The magistrate also rejected Ms. Firestone's challenge to the

---

[1] This Court issued a decision reversing a summary judgment order that was issued in Case. No. CV-2008-02-1570. *CitiMortgage, Inc. v. Firestone*, 9th Dist. Summit No. 25959, 2012-Ohio-2044, ¶ 1.

validity of the note and mortgage and found that Kirkland had satisfied all of the elements necessary to secure a decree of foreclosure against Ms. Firestone.

{¶8} Ms. Firestone filed a number of objections to the magistrate's decision. The trial court subsequently issued a journal entry overruling Ms. Firestone's objections and adopting the magistrate's decision. Accordingly, the trial court entered judgment in favor of Kirkland in regard to counts in the amended complaint pertaining to the note and mortgage and denied the relief requested in the remaining counts that were pleaded in the alternative.

{¶9} On appeal, Ms. Firestone raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S FINDINGS ARE AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶10} In her first assignment of error, Ms. Firestone argues that the trial court's finding that her signature was on the mortgage was against the weight of the evidence. Ms. Firestone's argument hinges on her contention that the trial court's determination regarding her signature on the mortgage resulted from its failure to recognize that the magistrate made a number of erroneous factual findings. This Court disagrees.

Background

{¶11} In support of Ms. Firestone's position that the trial court erroneously determined that she signed the mortgage documents, Ms. Firestone points to four specific findings by the magistrate that were ultimately adopted by the trial court. The findings at issue were set forth in paragraphs 30 through 33 of the magistrate's decision and read as follows:

30. [Ms.] Firestone called Meri Stemple (Stemple) as a witness. Stemple was qualified as an expert as to the requirements for loan origination and brokerage.

The Court finds her testimony did not establish [Ms.] Firestone's assertion that her signature on the Mortgage was not authentic.

31. At trial, [Kirkland] presented the testimony of Vickie L. Willard, D-BFDE, a forensic handwriting expert as to the authenticity of [Ms.] Firestone's signature that appears on the Mortgage document.

32. Vickie L. Willard, D-BFDE presented credible testimony and evidence that the signature that appears on the Mortgage and purports to be that of [Ms.] Firestone is, in fact, her signature.

33. Kirkland [] also called Stacey Harshbarger (Harshbarger). Harshbarger credibly testified she notarized [Ms.] Firestone's signature as it appears on the Mortgage and that, pursuant to her training and practice, she verified [Ms.] Firestone's identity and watched her sign the document prior to notarizing [Ms.] Firestone's signature.

{¶12} Ms. Firestone raised objections to the magistrate's decision on the basis that (1) the magistrate's factual findings were clearly erroneous; (2) the magistrate failed to apply the appropriate mortgage lender law; and (3) the magistrate denied Ms. Firestone the opportunity to present a defense by the manner in which it handled a number of evidentiary rulings.

{¶13} A review of Ms. Firestone's objections reveals that her challenge to the magistrate's factual findings was based on the notion that the magistrate ignored "unrefuted" evidence that the original loan and mortgage agreements were the result of fraudulent inducement and that there was further fraud at the time that the note and mortgage were transferred. Ms. Firestone argued that the magistrate disregarded evidence that First NLC Financial engaged in bait-and-switch tactics with respect to its mortgage products and disregarded a number of truth-in-lending safeguards. Notably, in support of her contention that the magistrate made erroneous factual determinations, Ms. Firestone did not object to the magistrate's characterization of the testimony offered by Stemple, Willard, and Harshbarger as to the authenticity of her signature on the mortgage. Moreover, while Ms. Firestone mentioned the testimony of Stemple and Willard in support of her position that she was denied the right to present a defense, Ms. Firestone did so solely in the context

of arguing that the magistrate erred in not requiring Kirkland to produce the original note and mortgage at trial because there were questions as to the validity of those documents.

{¶14} In overruling Ms. Firestone's objections and adopting the magistrate's decision, the trial court's analysis was responsive to the arguments that Ms. Firestone advanced in support of her objections. The trial court determined that there was no credible evidence in support of Ms. Firestone's assertions of fraud or illegality. Thereafter, in resolving Ms. Firestone's objection to the exclusion of the original note and mortgage documents as exhibits, the trial court noted that the admission of verified copies of the note and mortgage were sufficient to allow witnesses such as Stemple, Willard, and Ms. Firestone herself to offer ample testimony as to the validity and authenticity of those documents.

Discussion

{¶15} On appeal, Ms. Firestone contends that the trial court abused its discretion in adopting the magistrate's decision because the magistrate mischaracterized the testimony of Stemple, Willard, and Harshbarger regarding whether she signed the mortgage documents.

{¶16} "The prerequisites for a party seeking to foreclose a mortgage are execution and delivery of the note and mortgage; valid recording of the mortgage; default; and establishing an amount due." (Internal quotations and citations omitted.) *Sovereign Bank, N.A. v. Singh*, 9th Dist. Summit No. 27178, 2015-Ohio-3865, ¶ 9.

{¶17} "Generally, this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion." *In re L.M.W.*, 9th Dist. Summit No. 29670, 2020-Ohio-6856, ¶ 9, citing *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. However, "[i]n so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. An abuse of

discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶18} Civ.R. 53(D)(3)(b)(ii) provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Moreover, Civ.R. 53(D)(3)(b)(iv) states that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." It is well settled that the failure to specifically raise an argument in an objection to a magistrate's decision results in forfeiture of that argument on appeal. *Johns v. Johns*, 9th Dist. Summit No. 26393, 2013-Ohio-557, ¶ 17. Furthermore, when a party fails to set forth a plain error argument in their merit brief, this Court will not create a plain error argument on their behalf. *See Horak v. Decker*, 9th Dist. Summit No. 28731, 2018-Ohio-3659, ¶ 29.

{¶19} Ms. Firestone's argument is not well taken. As noted above, an objection to a magistrate's decision must be "be specific and state with particularity all grounds for objection." Civ.R. 53(D)(3)(b)(ii). While Ms. Firestone generally objected on the basis that the magistrate failed to recognize evidence of fraud, she did not specifically object to the manner in which the magistrate construed the testimony of Stemple, Willard, and Harshbarger. Accordingly, Ms. Firestone has forfeited all but plain error on appeal. *See Johns* at ¶ 17. Furthermore, as Ms. Firestone has not set forth a plain error argument in her merit brief, we decline to create one on her behalf. *See Horak* at ¶ 29.

{¶20} Notably, Ms. Firestone further argues on appeal that the trial court made additional erroneous factual findings regarding the testimony of Stemple, Willard, and Harshbarger that

exceeded the scope of the findings made by the magistrate. This argument is unfounded. Throughout the course of its journal entry overruling Ms. Firestone's objections, the trial court touched on various portions of the evidence presented at trial. For example, near the end of its fraudulent inducement analysis, the trial court offered a very brief summary of the magistrate's findings regarding the testimony of Stemple, Willard, and Harshbarger in support of its conclusion that Ms. Firestone had not demonstrated fraud. The trial court also discussed the magistrate's findings regarding Stemple's testimony in resolving Ms. Firestone's evidentiary objections. The portions of the trial court's analysis of which Ms. Firestone now complains constituted synopses of the magistrate's findings and did not constitute additional findings by the trial court. It follows that because Ms. Firestone did not object to the magistrate's findings based on the testimony of Stemple, Willard, and Harshbarger, she has forfeited any argument on appeal as to the trial court's decision to incorporate those findings into its analysis. *See* Civ.R. 53(D)(3)(b)(iv).

**{¶21}** Ms. Firestone's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT WAS PREVENTED FROM PRESENTING EVIDENCE OF HER DEFENSES AND WAS THEREBY DENIED DUE PROCESS.

**{¶22}** In her second assignment of error, Ms. Firestone contends that her due process rights were violated when she was prevented from presenting several pieces of evidence in support of her fraud and illegality defense at trial. This Court disagrees.

**{¶23}** As noted above, this Court generally reviews a trial court's action regarding a magistrate's decision for an abuse of discretion. *In re L.M.W.*, 2020-Ohio-6856, at ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 18. With respect to the issues raised by Ms. Firestone in her second assignment of error, this Court remains mindful that "[a] trial court enjoys broad discretion

in the admission and exclusion of evidence." *Bank of New York v. Nutter*, 9th Dist. Medina No. 19CA0063-M, 2020-Ohio-6988, ¶ 29.

Background

**{¶24}** In her answer to the complaint, Ms. Firestone noted that she intended to raise the affirmative defenses of fraud and violation of state and federal laws. The core dispute throughout the proceedings below was whether a combination of incompetence and deceptive practices on the part of First NLC Financial at the time of the loan origination rendered Kirkland unable to foreclose on the mortgage against Ms. Firestone. The authenticity of Ms. Firestone's signature on the mortgage was at the center of this dispute. Furthermore, throughout the course of trial, Ms. Firestone sought to demonstrate that many of the questionable practices in the mortgage industry that contributed to the collapse of the real estate market in 2008 were present in this case.

**{¶25}** Kirkland's first witness at trial was Chris Climer, who serves as a senior acquisitions manager for Kirkland. Climer testified as to how Kirkland came to acquire the note and mortgage, as well as some background regarding the origination of the note and mortgage based on his review of the loan file. On cross-examination of Climer, Ms. Firestone asked a series of questions about deceptive practices in the mortgage industry that led to the financial collapse in 2008. When Ms. Firestone inquired as to what Kirkland paid for the obligation at issue in this case, Kirkland objected on the basis that it was not relevant. The magistrate sustained the objection. Ms. Firestone then asked why Kirkland was motivated to acquire the obligation when it had knowledge that the borrower had consistently missed payments. Climer responded, "That's what we do is acquire non-performing loans, many of them already in litigation." Ms. Firestone inquired as to whether First NLC Financial was one of the firms that "ran into problems" in 2008. The magistrate sustained an objection to that question. Ms. Firestone suggested the question went

to the formation of the loan but indicated that she would move on to discussing several documents related to the loan.

{¶26} Later in his testimony, Climer discussed a letter that First NLC Financial sent to Mr. Firestone in July 2001 noting that there were multiple documents missing from the loan file, including the truth in lending disclosure, the borrower name affidavit, and the right to rescind form. Climer remained steadfast in his view that the documents mentioned in the July 2001 letter pertained to the note and were not relevant as to whether Ms. Firestone signed the mortgage. Ms. Firestone then pursued a line of questioning regarding whether First NLC Financial had the legal authority to write the mortgage in question. Climer acknowledged that the original note contained a rider indicating that First NLC Financial was acting pursuant to its authority as an exempt mortgage banker and that the loan was not made pursuant to the Ohio Mortgage Loan Act.[2] Ms. Firestone asked Climer whether the language in the rider impacted the validity of the loan. At that point, the magistrate sustained an objection on the basis that Climer did not possess the basis of knowledge to answer the question because he was not a lawyer. When Ms. Firestone rephrased the question, Climer testified that, while he was not a lawyer, he maintained the position that the legal validity of a note was a key component to its value as an asset and that Kirkland would not have acquired the loan if he determined it was invalid.

{¶27} In her defense, Ms. Firestone called Meri Ruth Stemple to testify as an expert witness based on her experience as a loan officer. Kirkland objected on the basis that Stemple did not have the requisite background to qualify as an expert witness. The magistrate permitted

---

[2] The language of the rider indicated that First NLC Financial was an exempt mortgage banker under the Ohio Mortgage Broker Act. The rider further specified that while First NLC Financial was licensed under the Ohio Mortgage Loan Act, the loan was not being made pursuant to the authority of that statute.

Stemple to testify as an expert in loan origination and brokerage but noted that it would strictly limit her testimony to those subjects.

{¶28} Based on her review of the note signed by Mr. Firestone on June 28, 2001, Stemple testified that the note was actually a second mortgage product instead of a first mortgage product, meaning that Mr. Firestone received less protection than he may have understood at the time of signing. At one point, the magistrate ruled that Stemple was not qualified to testify as to the authenticity of Ms. Firestone's signature on the mortgage, although she could testify as to the validity of the mortgage based on her review of the loan file. Stemple testified that she did not believe the loan was valid. In support of this position, Stemple noted that the missing disclosure forms, such as the truth-in-ending form, called the validity of the note and mortgage into question. Stemple further expressed her belief that Mr. Firestone asked for a first mortgage product but was unknowingly given a second mortgage product at closing. Kirkland objected on the basis that Ms. Firestone had not set an adequate foundation as to how Stemple had knowledge of what type of mortgage product Mr. Firestone had requested. The magistrate sustained the objection. Thereafter, the magistrate sustained a number of additional objections on the grounds that Ms. Firestone had not established a foundation to allow Stemple to opine as to what type of mortgage Mr. Firestone had hoped to secure from First NLC Financial.

{¶29} During Stemple's testimony, Ms. Firestone also sought to introduce a packet marked as Exhibit E. Stemple indicated that she had reviewed the packet after Mr. Firestone's lawyer had presented it to her sometime prior to trial. Exhibit E contained an array of documents, including several loan applications that were ostensibly taken out by Mr. Firestone. Kirkland objected to the admission of Exhibit E on the basis that, because there was not a signed loan application contained therein, the documents were not probative as to what type of mortgage

product Mr. Firestone hoped to secure from First NLC Financial.  After a sidebar, the magistrate sustained Kirkland objections in regard to the majority of the documents contained in Exhibit E.

{¶30}  Ms. Firestone subsequently proffered Stemple's testimony.  Specifically, Ms. Firestone indicated that Stemple would have testified that the loan was not valid because Mr. Firestone thought he secured a standard 30-year fixed rate mortgage but instead was given a 15-year adjustable mortgage with a balloon payment.  Ms. Firestone also proffered Exhibit E in its entirety. In addition to arguing that the loan application packet was probative as to validity of the note and mortgage, Ms. Firestone argued that Stemple's testimony established a foundation for the documents and that Stemple, in her expert capacity, possessed the ability to authenticate the documents.

{¶31}  Ms. Firestone raised a number of objections to the magistrate's evidentiary rulings, essentially arguing that her due process rights were violated because the rulings prevented her from presenting a defense.  Specifically, Ms. Firestone asserted that the magistrate excluded relevant testimony from Climer regarding what Kirkland paid to acquire the note, as well as whether First NLC Financial engaged in unlawful and unethical practices at the time of the loan origination.  Ms. Firestone contended that she was prevented from challenging the validity of the note and mortgage when, in regard to Stemple's testimony and Exhibit E, the magistrate excluded evidence of bait-and-switch tactics on the part of First NLC Financial.

{¶32}  The trial court overruled Ms. Firestone's objections to the magistrate's evidentiary rulings.  In regard to what Kirkland paid to acquire the note and mortgage, the trial court reasoned that whether the note constituted a "bad loan" was irrelevant as to the two most critical issues in the case, namely whether the loan was in default and whether the mortgage was valid.  The trial court further found that because Mr. Climer was neither a lawyer nor a former employee of First

NLC Financial, he did not have a basis of knowledge to testify as to whether First NLC Financial had complied with Ohio laws or whether the firm had engaged in the types of deceptive practices that resulted in the collapse of the real estate marked in 2008. The trial court further found that the magistrate properly limited the scope of Stemple's testimony. In rejecting Ms. Firestone's due process claim, the trial court emphasized that Stemple was permitted to testify as to the validity of the loan and that Ms. Firestone was permitted to testify extensively in her own defense.

{¶33} On appeal, Ms. Firestone cites extensively to Evid.R. 402 and Evid.R. 403(A) in support of her position that the aforementioned evidence she sought to introduce was relevant to her fraud and illegality defense and, further, that the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice. Ms. Firestone also points to cases such as the Sixth District's decision in *Byrley v. Nationwide Life Ins. Co.*, 94 Ohio App.3d 1, 12 (6th Dist.1994), in support of the proposition that "[t]he exclusion of probative evidence of fraud is, by its nature, prejudicial."

{¶34} Evid.R. 402 provides that relevant evidence is generally admissible unless otherwise provided by a number of sources, including the Ohio Rules of Evidence. Evid.R. 602 states that "[a] witness may not testify to a matter unless evidence is introduced to support a finding that the witness has personal knowledge of the matter." Evid.R. 701 states that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." With respect to expert witnesses, Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶35} In this case, the trial court did not abuse its discretion in overruling Ms. Firestone's objections to the magistrate's evidentiary rulings. With respect to both Climer and Stemple, Ms. Firestone repeatedly asked questions about First NLC Financial's lending practices that either lacked an adequate foundation, called for an interpretation of documents that were not authenticated, or went well beyond the personal knowledge of the witnesses. *See State v. Brooks*, 3d Dist. Marion No. 9-99-40, 1999 WL 1076135, *5 (Dec. 1, 1999) (laying a proper foundation is a prerequisite for the admission of relevant evidence); Evid.R. 602. Accordingly, the trial court did not abuse its discretion in overruling Ms. Firestone's objections to these rulings. Furthermore, to the extent Ms. Firestone argues that these rulings undermined her right to present a defense, her assertion is not supported by the record. While Climer did not testify as to the legality of First NLC Financial's lending practices, Ms. Firestone was able to elicit testimony from Climer establishing that this particular case concerned a high-risk loan involving years of missed payments that had been tied up in litigation. Moreover, while the scope of Stemple's testimony was limited as discussed above, Stemple was able to offer her opinion that there were concerns with the validity of the loan based on her review of the file. Under these circumstances, Ms. Firestone has not demonstrated that the trial court erred by failing to recognize a violation of her due process rights at trial.

{¶36} Ms. Firestone's second assignment of error is overruled.

III.

{¶37} Ms. Firestone's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, J.
FLAGG LANZINGER, J.
CONCUR.


APPEARANCES:

MARCUS M. LOMBARDI, Attorney at Law, for Appellant.

ALEXANDER E. GOETSCH, Attorney at Law, for Appellee.